We will begin with Moore v. United States. Mr. Hall. Good morning. May it please the Court. I'm Byron Holt. I'm attorney for Robert Moore. This is essentially a simple case. We started an action against the British government for the acts of a member of the British force, lack of it, in Tacoma. British government didn't answer. We moved for default. Should have been given a default. And the only reason that we're here today is because of the action by Judge Kuhnauer, ex-party, without notice to me, going to the U.S. Attorney's Office and asking the U.S. government to file an amicus. Now, I'm going to be very brief on my opening. I want to reserve most of my time for rebuttal here. But I think this Court should be aware that we tried to get the records in this case, and they were not made available to us. We've been stonewalled on this thing up and down the line by the British government, who in turn appointed the Army Claims Service to have the records, who in turn would not produce them for us, and the question is why. We were forced to file an action then, and we did, against the British government, based on the facts, as we stated in our complaint, that Southall was off-duty. There was no military operation going on. He was off-duty. Your complaint says he was on-duty, doesn't it? I'm sorry? Didn't your complaint say there was an official action, that he was, assumed him in his official capacity? Yeah. It's not in pursuance to any orders of the British government, but he is still within the course and scope of his employment as interpreted under Washington State law, and upon which we rely, and which I have briefed and set forth to the Court. He is not acting pursuant to any orders, and the amicus below did not cite to one case, to one case, where the Federal Tort Claim Act applied to someone acting in an off-duty capacity. They cited a number of cases, but there was always some military order involved, and that's not the case here. I ask this Court to look at, the only reason we're here is because SOFA, and I think this Court should look at two things within SOFA to determine whether Judge Kunauer was right in his decision. One is, is Southall a member of a force? Now, the facts in this case are the only facts below Kunauer and before this Court. If the amicus has other facts, if they have been in contact with the British government, those facts should have been provided to us in their footnote where they sat it, and they're not providing it to us. They're stonewalling us. And I object to that. And I object to them coming in here as an amicus when they should be intervening in the action and being a party and subject to the terms of this Court. It's not terribly useful, the anger here, but the point is that we, Judge Kunauer had to know whether he had jurisdiction or we have to know whether he had jurisdiction. And whether they're amicus or intervenors or whatever they are, we still have to know whether there's jurisdiction over this case as did Judge Kunauer, right? So it's more useful to get to the merits of the question of whether we have jurisdiction over this case or whether he had jurisdiction over this case. That is up to the British government to answer and respond whether there's jurisdiction of the case. It's not up to an amicus. No, it isn't, because it's a Federal court that can't do anything without jurisdiction. Okay. Then Judge Kunauer should have decided jurisdiction based on the facts that were before him in the complaint without seeking the amicus to intervene or join. And the amicus should have intervened in the action if they had facts to the contrary. And there are no facts to the contrary other than what's stated in the complaint. Now, we've asked for those that we didn't get. I'd ask for attorney's fees in this case because this is outrageous, to put us to the time and effort of responding to something where a default judgment should have been entered in the case and was not. In addition, I asked the commissioner of this case for summary reversal. He didn't do that. He went ex parte to the U.S. Department of Justice and got the amicus out here on that also. That's a violation of the canons of judicial ethics. It's a violation of their oath of office to deny things like this. And it's outrageous. We asked for attorney's fees in this case. Now, I'm going to reserve the balance of my time here for a rebuttal argument. Thank you. Okay. Thank you. May it please the Court. Sushma Soni for the United States has amicus in support of the judgment below. Is that possible? Is that better? Or maybe down to the podium there. Speak louder. Okay. May it please the Court. The United States would like to make a couple of points about the amicus. First of all, it is not the case that the nato sofa strips the plaintiff of any remedy. It simply specifies the way in which he can go about seeking relief. But actually, in this case, and this is somewhat disturbing, it would strip him of a remedy, wouldn't it? Because if he tried to sue, as you say he should have, i.e., suing the United States for the Federal Tort Claims Act, he wouldn't have had a case because there's an exception for intentional torts. Is that right? There is. Now, that would have to be decided in an FTCA suit. So he wouldn't have a remedy. But that does not mean that he therefore gets to proceed. So similar exception under the FSI, the Federal, the Foreign Sovereign Immunity Act. There are other exceptions under the FSIA, but the most important thing to remember about the FSIA is that under 28 U.S.C. 1604, the FSIA was enacted subject to the preexisting international agreement. I'm just trying to point out that it isn't true that the remedies are coincident, and it is possible that by going this route rather than the other, it's probable here, he would not have had a remedy that he would have had the other way. Well, maybe it's more helpful for the Court if I go back to what the situation was when the nato sofa was enacted. At that time, he definitely would not have had a remedy because someone in his situation, in the plaintiff's situation, suing for conduct that he alleges to be within the scope of employment, could have tried to proceed against the United Kingdom. He would have been thrown out on sovereign immunity grounds. He could have attempted to proceed against the individual. However, the individual was likely judgment-proof. And the whole reason that the NATO signatories got together and drafted the NATO sofa was to provide a regularized process, something that was predictable and orderly and familiar to the injured parties, so that now the way that it works, and it works the same for Plaintiff Moore as it would work for someone who incurs a similar injury in France or Germany or Italy or any of the NATO countries, meaning that under NATO sofa, Article 8, Paragraph 5, he proceeds against his own government. So he proceeds against his own government in his own home courts under his home state's law as though he were injured by a member of his own country's military. And that was considered to be a dramatic improvement. It also, the NATO sofa involves what we call the receiving state. In this case, that's the United States. It received the British soldiers here. It involves the receiving state, and the receiving state takes the lead in litigation or in negotiating a settlement. Now, there are other you are correct, Judge Berzon, that in this case, an FTCA action would surely result in the United States raising the intentional tort exception. There are actually a number of other defenses that we could raise, including the FTCA has a number of administrative requirements. Those would have to have been fulfilled. However, that is the only procedure he gets under the NATO sofa. And that is that he has to proceed as though he were injured by an American soldier. Now, all of that follows from the fact that he is arguing that Corporal Southall acted within the scope of employment. That is on the face of his complaint. And our suggestion of lack of jurisdiction was based entirely on what is in his complaint. He alleges Corporal Southall was on active duty, that he is a member of the British military, that he was acting within the course and scope of his employment, and that on its face is enough to bring into play NATO sofa. There is not any additional information that requires NATO sofa to apply. Well, there is this question about the force, but I gather that your position is that the material in the complaint is sufficient to show that they are force unless there is proof that they are not. Yes, Your Honor. And in fact, he didn't actually – the argument that the plaintiff made below about force was that, and I believe it's the same one he just made on appeal to this Court, was that he's – the – Southall was not a member of the force because he was not at the moment of the injury involved in a NATO mission. Well, the courts have unanimously rejected that. Every court to have considered that question has said no. That is not the test. And in fact, you can just turn – Is it true that there is basically no appellate case law on this interaction between NATO sofa and FSIA? Well, there's the Dabercow case from this Court that's primarily an FTCA case, but it does actually sketch out how the NATO sofa works. The other appellate court cases that come to my mind all involve the criminal side of NATO sofa, and those are very different issues. The fact is, and the law journals on NATO sofa bear this out, this comes up very rarely in the United States. It is primarily a means of dealing with claims that come up in Europe where most American soldiers are stationed. And typically, the typical NATO sofa claim is a car accident, although assaults are probably not that uncommon. I must address one point that the plaintiff made about the documents that we reference in footnote four of our brief. We reference them only to point out that, in fact, the arguments that we've made here have not been sprung on the plaintiff. By his own complaint, you can see that he engaged in an extensive correspondence with both the Army Claims Service and the Ministry of Defense, the British Ministry of Defense. The documents that we refer to and which we are prepared to furnish to the Court if the Court would like to see them are all letters that were sent to plaintiff's counsel. There's no secret information. It's information he has. I want to ask you something else. Judge Cunaro decided with regard to the FIA claims that they were also barred by NATO sofa as arising out of a pertinent situation. That doesn't seem right to me. It seems to me it may be barred, but for other reasons. Well, it would be barred for other reasons. You can't say that the British government had a FOIA claim. Right. FOIA does not apply to foreign governments. It doesn't apply to individual foreign individuals. However, it is actually true, Judge Berzon, that if we turn to Article VIII, Paragraph 5, the NATO sofa, that's what we say precludes jurisdiction in this case, and it's on page 44 of the excerpt of record, claims, and then other than contractual claims that are not at issue here, arising out of acts or omissions of members of a force done in the performance of official duty. That is very broad. It's not claims arising out of. So because the information he is seeking is information that is arising out of the tort against him, it would, in fact, be covered by the NATO sofa. Now, how would he really get this information? Well, if, in fact, the individuals were not acting within the scope, he could proceed against those individuals directly under he would have diversity jurisdiction. He could proceed in district court. And he could attempt to obtain that information through the time-honored vehicle of the letter rogatory. Alternatively, my understanding from the Army Claims Service is that the reason why that seems strange to me is because of the nature of a FOIA claim. I could have brought the same FOIA claim, right? It doesn't depend on if you're having any connection to any incident. It's really about wanting information and doesn't seem to me to arise out of the underlying information that you're trying to get. Because the whole purpose and structure of FOIA doesn't, it seems to me, is quite divorced from whatever the underlying situation is that you're trying to get information about. Well, here he says the whole reason he's looking for the information is not. Well, that may be. But you have to look at the cause of action out of his particular motivation. Well, in this case, and the NATO sofa does predate all those other laws. But FOIA doesn't. And is there any situation that you're aware of in which FOIA has been said to arise out of whatever it is that you're trying to get information about? I am not familiar. But I will tell you, Your Honor, I am not a FOIA expert. Within my office there are people who are, but I am not one of them. But certainly it would be enough, Your Honor, to say that FOIA on its face does not apply to claims against the United Kingdom or these individuals. Now, as I said, we are prepared to provide that information to the court. The court would like to see it. The Plaintiffs' Counsel already has that information. But one way he could obtain the information he is seeking, which I take it is somewhat different from the limited information we have, would be to, according to the Army Claims Service, he could actually contact someone he has dealt with in the Army Claims Service, Doug Driven, and that he would Mr. Driven would give him a contact in the Defense Attaché of the British Embassy in D.C. And that, I see that my time is up. Can I complete my description? Yes, please. The Defense Attaché could then contact the Ministry of Defense Records Office in Glasgow, Scotland, and see if that material could be made available in some redacted form. And besides, I don't think there is a parallel cause of action to FOIA under, for the British Government. Well, the scenario I have just sketched out for the panel does not involve any British FOIA-type law. It is simply the Army Claims Service has attempted to be accommodating through this entire, despite what it says in the briefs, and, again, it came up with this alternative method for obtaining the information that he seeks. But the fact is, under native FOIA, he cannot bring a suit directly against the Americans within the scope of employment. Thank you very much. Thank you. I have provided in my reply brief on pages 5, 6, and 7, 11 matters which have not been answered by the amicus in this case, in their briefs, and bear on the issue of jurisdiction, jurisdictional facts, why we are here. I want to remind the Court, in the strongest possible terms, that Moore did nothing wrong on the night of January 17, 1997. He was struck from behind for reasons we don't know, that only the British Government knows. For reasons Southall was court-martialed. We don't know why he did that. Moore did nothing wrong, and yet he's been seriously, seriously injured because of this action by a British citizen in the United States under Washington State law. Secondly, we did everything that the law requires us to do to perfect our claim against the British Government. They were served twice. We followed their instructions regarding seeking information from the Army Claim Service. We did everything possible that they instructed us to do. And now we're caught in a situation here which is clearly, clearly, clearly outrageous in the application of United States law to a United States citizen who has done nothing wrong either by way of conduct forcing this event or by way of action in any court anywhere causing for this result here. We have provided the facts in the complaint. Those are the only facts. Now, if she has letters from somebody, I don't know where she got those. She had to get them from someplace. She concedes that they have facts. They should not be allowed to come in here as an amicus to destroy a perfectly valid procedural way of dealing with a lawsuit, following the rules of this Congress, and yet the amicus come in to destroy that in conjunction with two incidents of judicial misconduct. Now, that's outrageous. Now, how can we deal with things like this as lawyers, as citizens of the United States, if we are going to be put to this kind of outrageous conduct? And parenthetically, how much did the government spend in sending Ms. Suma out here to argue this case? Why? Are they seeking reimbursement from the British Government? We don't know that. At any rate, I mean, it is totally outrageous. And it's total impact on more, on our court systems, by our judges. And I have said that this is gaming the system. And I mean that. This is total gaming of the system. And I plead with this Court, call a halt to this. Don't allow it anymore. We still have to hear your legal argument, if we could. Yes, all right. But, again, I ask this Court, you've got a case of first impression, even if SOFA applies as to which law applies in this setting. And state law, I think we're the only jurisdiction in SOFA that I can find. I have had cases in Italy, Germany, and England, all over, involving SOFA. And it's the only jurisdiction that has a dual system of laws, both federal and state. And SOFA refers to the laws of the receiving state. I have provided this Court with ample case law by the courts of the State of Washington authorizing a claim of this sort against the British government under the laws of the receiving state, which is the State of Washington. Further, that in the absence of anything we have alleged in our complaint. Yes, something. If you had begun this whole case by alleging that he was not acting in the course of his employment, which it certainly seems like he wasn't, it was a bar, it's an incident that happened in a bar when people were not directly on duty, you must have done that for a reason, alleged that he was operating in the course of his employment. But if you had taken it the other way, I gather you would have had a cause of action, there wouldn't have been a problem. Is that right? Well, first thing, he's not under military orders. I mean, that's pretty clear, I think, going out to the U.S. But you allege that it was in the course and scope of his employment. Now, suppose you had alleged, and it's now, the sections of limitations have now run. If you had done it the other way, wouldn't you have had a remedy? You mean by going on the Federal Court Claim Act? Right. The Federal Court Claim Act requires a claim to be filed within six months. Well, you didn't do that. But you can't do that. Isn't that anybody's trying to deprive you of a remedy? You just didn't do it right. We tried to get the information upon which to file a Federal Court Claim Act, and they prevented us from getting the information. You know, I don't know what – and then there's the intentional tort exception to it. Now, without the – we were put to an election on this thing real early, not by our actions, but by the British government as well as the – we put them on notice of the claim, that we're making a claim under – against them directly. They referred us to the Army Claim Service. The Army Claim Service rebuffed us at this point, would not provide us any information. Now, in looking at the case and in filing it, we found it within the three years under Washington state law. We met that test of jurisdiction. And the – we have cited this court to a number of cases in which, even though not on duty, they can still be within the course and scope of their employment. We don't know who the John Doe is 1 and 10. We don't know who was there. We don't – I have asked a whole series of questions that needed to be answered in terms of the jurisdictional facts. The Army affirmatively prevented us from getting that. I see where my time is up. We ask you that a default – that the court be reversed. Default judgment be entered against the British government. We be awarded our attorneys' fees in such sums as I have applied for the court in here. And we thank the Court for its attention. Thank you very much. The case of Moore v. United States is submitted. We will go on to – and I will probably mispronounce this.
judges: B. Fletcher, Hamilton, Berzon